IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MUNICAP, INC. | \* \* \* |
| Plaintiff, | \* \* |
| v. | \* Civil Case No.: SAG-24-1274 \* \* |
| THADDEUS WILSON | \* \* |
| Defendant. | \* \* |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff MuniCap, Inc. ("MuniCap"), a Maryland-based public finance consulting firm, filed this lawsuit against its former employee, Thaddeus Wilson, alleging that Wilson's post-termination conduct violated the terms of his employment contract and the Maryland Uniform Trade Secrets Act, Md. Code. Ann., Com. Law, § 11-201, *et seq*. Wilson has filed a motion to dismiss for failure to state a claim, ECF 18, with a memorandum of law, ECF 20. MuniCap opposed, ECF 24, and Wilson filed a reply. ECF 33. This Court denied the jurisdictional aspects of Wilson's motion at a hearing in June, 2024. ECF 27.[1] As to the remaining 12(b)(6) portion of the motion, no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons below, Wilson's motion to dismiss is denied.

---

[1] Wilson also asked this Court, if devoid of jurisdiction, to consider transferring this case to the District of South Carolina. While it is possible that the District of South Carolina is a more convenient venue, this Court does not have a sufficient record regarding the locations of witnesses and evidence to find transfer under 28 U.S.C. § 1404(a) appropriate at this stage. Should those supporting facts arise in discovery, Wilson may renew his motion to transfer.

I.   **BACKGROUND**

The following facts are derived from the Complaint, ECF 1, and presumed true for purposes of this motion.

MuniCap is a Maryland-based public finance consulting firm specializing in public financing related to real estate development. ECF 1 ¶ 3. Defendant Thaddeus Wilson is a citizen of South Carolina who was employed by MuniCap from December 9, 2008, to April 12, 2024. *Id.* ¶ 4. Upon his hiring, Wilson received a detailed offer letter, stating that, "Your position will include significant exposure to corporate trade secret information. This information is subject to restrictions by the Uniform Commercial Code (UCC) and the 'Employee Confidential Information and Consulting Agreement' attached to this letter." *Id.* ¶ 5. The Employee Confidential Information and Consulting Agreement ("the Agreement"), which was attached to the offer letter, further elaborated that by accepting employment at MuniCap, Wilson agreed

> not disclose to anyone outside of the Company [i.e., MuniCap] and will not use other than for the benefit of the Company any information of confidential or proprietary nature concerning the Company's or any of its affiliates' business matters of affairs ('Confidential Information') including but not limited to computer models, documents, product plans, strategic and tactical plans, growth plans, business plans, or identity of information about customers/clients and their needs or requirements, all of which shall be considered confidential or proprietary unless Company specifies in writing that it is not confidential or proprietary.

*Id.* ¶ 6; ECF 1-3 ¶ 1. The Agreement required an employee to return all confidential information to MuniCap upon termination, and clarified that any confidential information was MuniCap's property. ECF 1 ¶ 7.; ECF 1-3 ¶ 3. Finally, in the event that an employee decided to end his employment with MuniCap, the Agreement provided MuniCap with an option to require the employee to provide consulting services to MuniCap for twelve months after termination—essentially, a noncompete agreement. ECF 1 ¶ 8; ECF 1-3 ¶ 4. MuniCap was required to inform a

former employee of whether it intended to exercise the right within thirty business days of the employee's resignation. ECF 1 ¶ 8; ECF 1-3 ¶ 4. If MuniCap exercised the right, during the consulting period, the former employee agreed that all clients of MuniCap or prospective clients of MuniCap he had worked with during his employment would be considered the clients of MuniCap, and that he would not solicit business from, contract with, or perform work for those clients during the consulting period. ECF 1 ¶ 8–9; ECF 1-3 ¶ 4.4. Wilson signed the letter and the Agreement in 2008. ECF 1 ¶ 10. He also received a copy of MuniCap's employee handbook, which outlined policies surrounding confidentiality and trade secrets. *Id.* ¶ 11.

Throughout his fifteen-year employment, Wilson had access to MuniCap's confidential information and proprietary documents, and, in particular, client information. *Id.* ¶ 12. He was an Executive Vice President when he resigned via email in 2024. *Id.* ¶¶ 4, 13. Wilson spoke with MuniCap President Keenan Rice the following Monday, April 15, 2024, and indicated that he planned to go into business for himself and hoped to take the clients with whom he had worked while employed at MuniCap with him. *Id.* ¶ 14. Wilson and Rice discussed MuniCap's option of exercising its right to a twelve-month consulting period. *Id.* ¶ 15. Wilson "insinuated that if MuniCap chose to exercise its rights … he would not be cooperative." *Id.* MuniCap informed Wilson (through an email from Rice) that it would exercise its right to a twelve-month consulting period that same morning. *Id.* ¶ 16. Early that afternoon, Rice emailed Wilson again and reminded him that, under the Agreement, he was prohibited from doing business with MuniCap's clients for the duration of the consulting period, unless he was doing so on behalf of MuniCap. *Id.* ¶ 17. Two hours later, Rice emailed Wilson a third time, reiterating that Wilson was not permitted to contact MuniCap clients except on behalf of MuniCap. *Id.* ¶ 18.

But later that same day, a MuniCap client, D.R. Horton, Inc., informed MuniCap that it had been contacted by Wilson, who was seeking to continue working with D.R. Horton, Inc. through his new business, Water Street Public Finance. *Id.* ¶ 19. Rice emailed Wilson to express that, per the Agreement, he could not work for D.R. Horton, Inc., without MuniCap's consent. *Id.* He further explained that any work with a government agency (like D.R. Horton, Inc. and most MuniCap clients, as a municipal consulting firm) would require a consent to assignment signed by MuniCap, and that MuniCap was not prepared to consent to an assignment. *Id.*

Over the next two weeks, MuniCap became aware that Wilson had solicited business from, contracted with, or performed work for six other MuniCap clients outside of his consulting agreement: Youngblood, the City of Hardeeville, South Carolina, SRE Santini, LLC, the City of North Myrtle Beach, South Carolina, Weber USA Corporation, and Public State Ports Authority. *Id.* ¶¶ 20–32. Several of these clients accidentally emailed Wilson at his former MuniCap email address, and those communications revealed that Wilson had shared documents obtained during his employment with MuniCap and redirected documents intended for MuniCap to his private accounts. *Id.* ¶ 26, 28, 30.

Although MuniCap instructed Wilson to return his company computer upon his resignation, he has kept it and used confidential information stored on it to solicit MuniCap's clients. *Id.* ¶ 31.[2] MuniCap believes that "Wilson has used and relied upon MuniCap's confidential information and trade secrets" such as "data related to the cost of … projects, development plans for particular properties, and the results of calculations obtained through the use of MuniCap's

---

[2] As became apparent at the June 17, 2024, hearing in this case, Wilson has now returned the laptop. Nevertheless, the Complaint alleges that he retained the laptop well beyond when he was asked to return it.

computer models," which are "highly complex calculations that were developed by MuniCap and are not publicly available." *Id.* ¶ 33.

MuniCap filed this lawsuit on April 30, 2024, seeking damages for breach of contract (Count I), tortious interference with contractual relationships (Count II), and violations of the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law § 11-1202(a). MuniCap initially sought a temporary restraining order and preliminary injunction, which this Court denied on June 17, 2024. ECF 27. This Court also denied Wilson's motion to dismiss based on lack of personal jurisdiction, and deferred ruling on Wilson's motion to dismiss for failure to state a claim until it was ripe. *Id.*

## II. LEGAL STANDARD

Wilson argues that the Complaint fails to state a claim upon which relief can be granted. Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

5

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if … [the] actual proof of those facts is improbable and … recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from

the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III. DISCUSSION

1. Breach of Contract (Count I)

MuniCap first alleges that Wilson breached his Employee Confidential Information and Consulting Agreement by (1) disclosing confidential information outside of MuniCap; (2) using such information to solicit, contract with, or perform work for MuniCap's clients during the twelve-month consulting period; and (3) failing to surrender all company material containing confidential information, including material on his MuniCap laptop. ECF 1 ¶¶ 37–39. Wilson argues that MuniCap's breach of contract claim fails for two reasons: first, because it is in part preempted by the Maryland Uniform Trade Secrets Act; and second, because Section 4 of the Agreement did not create any enforceable rights.

As a general matter, the Maryland Uniform Trade Secrets Act does not displace contract remedies. Md. Code Ann., Com. Law § 11-1207(b)(i); *Ingram v. Cantwell-Cleary CO.*, 260 Md. App. 122, 152–53 (2023). Although some courts have found that MUTSA preempts contract claims for the misappropriation of trade secrets, Federal Rule of Civil Procedure 8(e) permits pleading in the alternative, particularly where a court has not yet ruled on whether confidential information constitutes a trade secret. *See, e.g.*, *Hardwire, LLC v. Ebaugh*, JKB-20-304, 2020 WL 5077469, at *4 (D. Md. Aug. 27, 2020) ("Courts in this District have held that plaintiffs may plead in the alternative under the liberal federal pleading standards that misappropriated confidential

7

information is not a trade secret, and as such, common law claims relating to such confidential information are not preempted by MUTSA."). At this stage, both claims can continue.

Wilson next argues that Section 4 of the Agreement—one of the two provisions that MuniCap alleges Wilson breached—is an unenforceable "agreement to agree."[3] And if it is not, he argues that it is overly broad and unenforceable because it is unclear what a "prospective client" is. Neither argument is persuasive.[4]

Although Section 4 created a right that MuniCap could choose to exercise or not, there were no remaining terms to be negotiated—MuniCap had a well-defined right, and sole discretion to exercise the right. Wilson agreed that MuniCap had that right and could exercise it when he signed the Agreement. It could not have been an agreement to agree, because the agreement happened in its entirety when Wilson signed his employment contract and agreed to the terms of the Agreement.

And the Agreement's definition of "prospective clients"—clients "from whom the Employee had solicited business while an employee of the Company"—is fairly narrow. *But see Bindagraphics, Inc. v. Fox Grp., Inc.*, 377 F. Supp. 3d 565, 574 (D. Md. 2019) (finding restriction on doing business with prospective customers overbroad when it included any client solicited by

---

[3] MuniCap has also alleged that Wilson breached the confidentiality provision of the agreement by failing to return his laptop.

[4] Wilson also suggests that the Agreement could be voided for mandating that Wilson perform personal services and for failing to define business that would compete with MuniCap. Nothing in Section 4 compels Wilson to actively work on MuniCap's behalf involuntarily; rather, the consulting agreement mainly restricts Wilson's ability to compete with MuniCap. To wit, MuniCap is not seeking specific performance of the consulting agreement, but rather to enjoin Wilson from competing with MuniCap. Wilson's suggestion that competition is not adequately defined is a red herring—it is alleged he stole MuniCap clients to perform the same duties he performed for them while employed at MuniCap; that is obviously competing with MuniCap.

anyone at the company, and not just those personally solicited by the employee). This non-compete, which only restricted Wilson from soliciting business from clients he personally contacted while at MuniCap for a one-year period, is unlike non-competes other courts have found overbroad under Maryland law. *See, e.g.*, *Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771, 772 (D. Md. 2015) (prohibiting former employee from working "in any capacity whatsoever, directly or indirectly" with a competing business was overbroad); *Seneca One Finance, Inc. v. Bloshuk*, 214 F. Supp. 3d 457, 461 (D. Md. 2016) (nationwide restriction on directly or indirectly working for competing business was overbroad because the "provision is not limited to the work that [defendant] performed…and is far wider in scope than is reasonably necessary to protect" the goodwill of the employer). Regardless, the Complaint only alleges that Wilson solicited existing MuniCap clients, not potential MuniCap clients; any potential overbreadth is inapposite.

Finding no reason not to enforce the contract as written, the remaining question is whether the Complaint adequately alleges that Wilson breached the Agreement. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). MuniCap has provided seven examples of MuniCap clients whom Wilson has solicited or performed work for outside of his consulting agreement with MuniCap within the twelve-month consulting agreement. That is sufficient to state a claim as to Section 4 of the Agreement. Additionally, MuniCap has alleged that Wilson has retained his company laptop and other confidential information, which is sufficient to state a claim as to Section 1 of the Agreement. MuniCap has stated a breach of contract claim upon which relief can be granted.

2. Tortious Interference (Count II)

MuniCap next alleges that Wilson tortiously interfered with its contractual relations with its clients. To state a claim for tortious interference with contractual relations, a plaintiff must adequately allege "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff in their lawful business; (3) done with the unlawful purpose to cause such damage and loss,

9

without right or justifiable cause on the part of the defendants; and (4) actual damage and resulting loss." *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 628–29 (2003) (citations omitted). Tortious interference with contract requires that the act of interference be "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 336 Md. 635, 657 (1994).

Wilson first argues that this count should fail because it is premised on him violating an agreement to agree. As this Court discussed *supra*, Section 4 of the Agreement was not an "agreement to agree;" it was an enforceable provision that MuniCap had unilateral discretion to exercise.

The remaining issue is whether MuniCap has adequately alleged "improper or wrongful conduct" on Wilson's part in interfering with MuniCap's contractual relationships. *Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 496 (D. Md. 2002). Wilson asserts that MuniCap has not alleged any act sufficient to serve as a predicate for a tortious interference claim, and thus must plead that Wilson had actual malice. This Court need not reach any malice issue because MuniCap has cited to a laundry list of independently "wrongful means" by which Wilson interfered with MuniCap's relationships with clients: "conversion of MuniCap's documents, wrongful retention of MuniCap's laptop under false pretenses in order to pilfer documents, misrepresentations to MuniCap's clients about his failure to register with the SEC, misuse of confidential information, and threats of groundless litigation." ECF 24 at 24; ECF 1 ¶ 48. While not all of those are particularly convincing, or particularly "wrongful," MuniCap has adequately pleaded that Wilson engaged in some sort of independently wrongful conduct that was intended to interfere with MuniCap's business relationships.

Although Wilson's legal and factual arguments about the viability of certain of these bases for MuniCap's interference claim may re-emerge later, with more information from discovery, taking the facts in the Complaint as true, MuniCap has successfully stated a claim.

3. <u>Maryland Uniform Trade Secrets Act (Count III)</u>

Finally, MuniCap alleges that Wilson appropriated MuniCap's trade secrets in violation of the Maryland Uniform Trade Secrets Act ("MUTSA"). To establish a claim for misappropriation of a trade secret under the MUTSA, MuniCap must plead that the documents at issue are trade secrets, and that that Defendants misappropriated those trade secrets. *See* Md. Code Ann., Com. Law § 11-201(c).

a. *Trade Secrets*

MUTSA defines a "trade secret" as any information that the owner "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and takes reasonable efforts to maintain its secrecy. Md. Code Ann., Com. Law § 11-1201(e) (2019).

Wilson rightly does not dispute that this information is the sort that can receive trade secret protections. The confidential information in question— which includes customer targeting data and strategy information—holds independent economic value. *See, e.g.*, *Albert S. Smyth Co. v. Motes*, No. CCB-17-677, 2018 WL 3635024, at *4 (D. Md. July 31, 2018) (deeming documents containing customer lists, pricing sheets, and business strategies as trade secrets); *Motor City Bagels v. Am. Bagel Co.*, 50 F. Supp. 2d 460, 478–79 (D. Md. 1999) (finding that a business plan was a trade secret because it included "personal insights and analysis brought to bear through diligent research and by marshaling a large volume of information").

11

Rather, Wilson argues that the Complaint fails to plead that MuniCap took reasonable efforts to maintain the secrecy of that information. Wilson notes some measures that MuniCap could have taken, but did not, and cites to an out-of-circuit district court case that found a confidentiality agreement insufficient to plead that the plaintiff took reasonable measures to protect its trade secrets. But the Complaint clarifies the efforts MuniCap took to keep this information secret. Namely, MuniCap "required Wilson to sign an employment agreement containing confidentiality and non-solicitation provisions, … distributed an employee handbook with explicit confidentiality provisions, … exclusively stored [confidential] information on the MuniCap computer network with limited and controlled access, and … sent Wilson repeated emails reminding him of his obligations to maintain the secrecy of [the confidential] information." ECF 1 ¶ 54. The MuniCap servers are password protected and have various security protections. *Id.* ¶ 16.

Under Maryland law, MuniCap's efforts to keep its documents secret are likely reasonable. *See Albert S. Smyth Co.*, 2018 WL 3635024, at *3–4 (finding that a company took reasonable steps to maintain confidentiality by keeping the trade secret documents on encrypted servers protected by firewalls to which only some employees had access, and by utilizing a confidentiality policy in its handbook); *NaturaLawn of Am., Inc. v. West Group, LLC*, 484 F. Supp. 2d 392, 399 (D. Md. 2007) (finding that a franchisor took reasonable steps to keep trade secret customer list secret, despite all franchisees having the list, because the franchise agreements provided for their return upon the end of the franchise relationship).

MuniCap has pleaded that the pieces of confidential information at issue here were trade secrets.

> b. *Misappropriation*

Neither Party focuses on the misappropriation prong in briefing, and neither disputes that Wilson misappropriated the confidential information. A trade secret is misappropriated when a person acquires the trade secret while knowing, or having reason to know, that the trade secret was acquired by improper means. Md. Code Ann., Com. Law § 11-1201(c). Misappropriation can also occur when a person who discloses or uses a trade secret after acquiring it through improper means. *Id.* Maryland law defines "improper" as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* § 11-1201(b). It does not necessarily rise to the level of misappropriation if an employee simply retains company files after leaving employment and refuses to turn them over. *See Diamond v. T. Rowe Price Assocs., Inc.*, 852 F. Supp. 372, 412 (D. Md. 1994) (noting that the employee often worked from her home office with the full knowledge and approval of her employer for many years and refused to return many files after her employment ended). For MuniCap to ultimately prevail on misappropriation, it would need to show that Wilson also actively transferred sensitive information from the laptop to another personal device. *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 315 (2004). MuniCap has alleged, however, that Wilson not only retained MuniCap's files, but actively used MuniCap's confidential information to compete against it. Moreover, he retained files after being expressly asked to return them.

It is true that "an employee enjoys a right, in competing against his former employer, to utilize general experience, knowledge, memory and skill as opposed to specialized, unique or confidential information gained as a consequence of his employment." *Md. Metals, Inc. v. Metzner*, 282 Md. 31, 46 (1978). Wilson worked at MuniCap for almost 16 years and reached the level of Executive Vice President. Therefore, it is possible that at least some of the forms of information

13

MuniCap alleges (such as client identities and methodologies) were misappropriated were derived from Wilson's lengthy experience at the company. But at a minimum, taking the facts in the Complaint as true, MuniCap has alleged that Wilson misappropriated some trade secrets and used them improperly.

Accordingly, MuniCap has stated a claim under MUTSA.

### IV.  CONCLUSION

For the reasons stated above, Wilson's motion to dismiss is denied. A separate Order follows.

Dated: November 19, 2024

                                                                                 /s/
                                          Stephanie A. Gallagher
                                          United States District Judge