**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MUNICAP, INC,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. 1:24-cv-01274-SAG** |
| **THADDEUS WILSON, *et al.*,** | * | |
| **Defendant.** | * | |
| | *     *     * | |

<u>**MEMORANDUM OPINION**</u>

THIS MATTER is before the Court on Plaintiff MuniCap, Inc's Motions to Compel.[1] ECFs 44, 54-1.  After reviewing the parties' briefs, the Court held a telephonic hearing on September 15, 2025.  I have considered the relevant matters in this case, the parties briefs, and arguments from the motions hearing.  ECFs 44, 54-1, 54-2, 54-3.  For the reasons stated below, the Court GRANTS IN PART the Motion to Compel Discovery, ECF 44, and DENIES the Motions to Compel Categorization of Document Production, ECF 54-1.

**I.    BACKGROUND**

Between December 8, 2008 and April 24, 2024, Defendant Thaddeus Wilson served as Vice President, Senior Vice President, and/or Executive Vice President of Plaintiff MuniCap, Inc.  MuniCap's Second Amended Complaint, ECF 63, at ¶¶ 6, 14 ("Compl.").  Pursuant to his employment agreement, Wilson agreed not to disclose "any information of confidential or proprietary nature" of the company.  Compl., at ¶ 7.  The

---

[1] After MuniCap filed its first Motion to Compel, Judge Gallagher, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, referred this case to me for resolution of discovery disputes and related scheduling matters.  ECF 45.

agreement granted MuniCap the right to require Wilson to "provide consulting services to [MuniCap]" for a fixed period and provided that "all prospective clients from whom [Wilson] has solicited business while in the employ of [MuniCap] shall be solely the clients of [MuniCap]." Compl., at ¶ 9.

Upon receiving Wilson's resignation on April 12, 2024, MuniCap provided notice that it was "exercising its right to initiate the 12-month consulting period." Compl., at ¶ 17. During the following few weeks and months, MuniCap received messages from its clients that they were working with Wilson. *Id.* at ¶¶ 20-37. MuniCap alleges that after resigning, Wilson used the restricted information for his own benefit by, among other things, soliciting MuniCap clients and persuading them to sign consulting agreements with Wilson's new entity, co-defendant Water Street Public Finance ("WSPF"). *Id.* at ¶¶ 14-40. MuniCap maintains that Wilson's access to and unauthorized use of MuniCap's non-public pricing, strategy, and modeling data caused these former clients to terminate their agreements with MuniCap in favor of a relationship with WSPF. *Id.* at ¶ 38. MuniCap also contends that such poaching was Wilson's intent, notwithstanding MuniCap triggering the non-compete provision in Wilson's employment agreement; he, according to MuniCap, made clear his designs when speaking with MuniCap's president days after his April 2024 resignation. *Id.* at ¶ 14-16

On April 30, 2024, MuniCap filed suit, alleging that by soliciting its clients, Wilson engaged in (1) breach of contract; (2) tortious interference with contractual and business relations; and (3) violations of the Maryland Uniform Trade Secrets Act. Compl., at 14-19.

Relevant to the pending discovery disputes, the parties appear to agree, at least in large part, on the following timeline:

- On February 7, 2025, MuniCap sent twenty-six Requests for Production (RFPs) to Wilson (the only named defendant at that time). *See* Pl.'s MTC ESI Ex. 1, ECF 54-1 at 15-28.

- On June 2, Wilson provided the first of rolling responses, sending more than 3,400 files to MuniCap in TIFF format,[2] except for spreadsheets that were produced in native Microsoft Excel format as requested by the RFPs. That same day, counsel conferred and discussed MuniCap's demand that the production be organized in accordance with Federal Rule of Civil Procedure 34(b)(2)(E) or, at the very least, that defense counsel provide a legend identifying the Bates ranges that correspond to each RFP. Defense counsel refused to take either requested action, maintaining that Rule 34(b)(2)(E)(i) does not apply to electronically stored information and the documents and their metadata were searchable. *See* Pl.'s MTC ESI Ex. 2, ECF 54-1 at 30.

- On June 6, counsel met and conferred on the dispute. Pl.'s MTC ESI at 3. In addition to reasserting the same positions, MuniCap's counsel maintained that searching metadata of these documents would not always reveal their connection to any particular RFP.[3] *Id.* Defense counsel

---

[2] "TIFF stands for Tagged Image File Format," which is "a widely used and supported graphic file format for . . . storing images." *Country Vintner of N.C., LLC v. E&J Gallo Winery, Inc.*, 718 F.3d 249, 253 n.5 (4th Cir. 2013) (citing Sedona Glossary 50) (brackets omitted) (ellipsis in original).

[3] During their discussions, Plaintiff's counsel also advised that he lacked the relevant software to perform the metadata filtering and searching that defense counsel proposed and insisted that obtaining such software was an undue burden when defense counsel could more easily, and with less expense, identify the relevant Bates ranges for

reiterated his resistance to further organization or labeling in the absence of a court order and opined that plaintiff's counsel could explore these issues in depositions—essentially, asking Wilson to connect a given document to the relevant RFP. *Id.*

- On June 16, Wilson provided a second production, this one containing more than 75,000 pages. *See* Pl.'s MTC ESI at 3; Def.'s Opp'n at 4.

On May 14, 2025, MuniCap filed its first Motion to Compel the Production of Documents. Plaintiff's Motion to Compel Discovery, ECF 44 ("Pl's MTC RFP"). This first Motion claimed that Wilson agreed to produce the documents but that they are past due. *Id.*, at 4-5. Wilson did not respond.

On July 16, 2025, MuniCap filed a second Motion to Compel, this time asking the Court to compel categorization of Wilson's electronically stored information ("ESI") production. Plaintiff's Motion to Compel Categorization of Document Production, ECF 54-1 ("Pl.'s MTC ESI"). MuniCap contends that the ESI lacked "any coherent or logical organization" and amounted to, in essence, "a solitary document dump, with no identification, categorization, or labeling according to particular requests or project." Pl.'s MTC ESI, at 1-2. On June 6, 2025, counsel met and conferred regarding the ESI organization but were not able to resolve their dispute. Pl.'s MTC ESI, at 3.

The Court held a motions hearing on September 15, 2025. ECF 96. During the hearing, MuniCap informed the Court that Wilson had produced documents responsive to all the RFPs referenced in the first motion compel except RFP 15. RFP 15 seeks "[a]ny and all copies of engagement letters, contracts or retainer agreements between Wilson

---

the RFP. *See* Pl.'s MTC ESI Ex. 3, ECF 54-1 at 31-32. As noted below, plaintiff's counsel eventually secured document review software.

and any attorney(s) representing him in connection with any dispute involving MuniCap[,]" on the grounds that,

> Copies are relevant to showing Mr. Wilson's intent/plan to breach his agreement and his plan to solicit MuniCap's clients, tortiously interfere, and misappropriate trade secrets. Of particular relevance is the date when he began meeting with attorneys. Mr. Wilson is free to redact the content of any letters or agreements, as MuniCap is not requesting any privileged material.

Pl. MTC RFP, at 10. Notwithstanding the lack of written response to the motion, Wilson's counsel objected to this production as irrelevant. ECF 44-3, at 5. During the hearing Wilson also objected based on attorney-client privilege.

Regarding the second Motion to Compel, beyond the positions it already presented in the meet and confer discussions, MuniCap noted that they hired an e-discovery specialist to ingest the ESI using a document review platform and that such efforts were successful in facilitating access to the documents and metadata, with the exception of an unspecified number of spreadsheets produced as Microsoft Excel files. Wilson maintained that as a result of successful access to the files and their metadata, no further organization was necessary, although counsel may be able to identify some additional information for the spreadsheets. Before the hearing concluded, MuniCap raised the issue of whether Wilson's production was, in fact, complete; defense counsel maintained that his certifications regarding the productions satisfied his discovery obligations.

## II.    LEGAL STANDARD

"District courts enjoy substantial discretion in managing discovery, including granting or denying motions to compel." *Pac. Life Ins. Co. v. Wells Fargo Bank, NA*, 702 F. Supp. 3d 370, 376 (D. Md. 2023) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of VA., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995). As a general matter, Federal Rule of Civil

Procedure 26(b)(1) establishes the scope of discovery as allowing the parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Courts have long considered information relevant for discovery purposes if it "bears on" or might reasonably lead to information that bears on any material fact or issue in the action. *See United Oil Co., Inc. v. Parts Associate*, 227 F.R.D. 404, 409 (D. Md. 2005); *Baxter v. Burns & McDonnell Engineering Co., Inc.*, No. 19-3241-JKB, 2020 WL 6485112, at *2 (D. Md. Nov. 4, 2020) (citing *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

## III.    ANALYSIS

After the representations during the hearing narrow the issues, three questions remain: (1) whether to compel discovery of RFP 15; (2) whether to compel further categorization of Wilson's ESI production; and (3) whether Wilson's certifications satisfy discovery requirements. For the reasons stated below, the Court will grant in part and deny in part MuniCap's motions. As to the Motion to Compel RFP, the Court will grant it and direct Defendant to respond to RFP 15, while denying the remainder of the written motion as moot. The Court denies the Motion to Compel ESI Categorization but directs Wilson to produce certain information for MuniCap regarding the remaining spreadsheets (i.e. which client or account each sheet pertains to). On the third point, at this juncture, the Court finds that Wilson's discovery certifications sufficiently fulfill his Rule 26(g) obligations.

### A. Wilson must produce documents responsive to RFP 15, with redaction of privileged material as necessary and justified.

Wilson's resistance to RFP 15 on relevance and privilege grounds are unwarranted. A party may "obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).    Here, MuniCap asserts breach of contract, tortious interference with contractual and business relationship, and violations of the Maryland Uniform Trade Secrets Act. Compl., at 14-19. To determine if RFP 15 is relevant to any "claim or defense," the Court looks to whether the information may bear on any element of each claim brought by MuniCap or defense thereto.

MuniCap maintains that retention or engagement letters from counsel may indicate Wilson's intent to commit the alleged acts. Neither breach of contract (Count I) nor the alleged violations of the Maryland Trade Secrets Act (Count III) require a showing of intent. *See LPS Default Solutions, Inc. v. Friedman & MacFadyen, P.A.*, No. 13-0794-WDQ, 2013 WL 4541281, at *3 (D. Md. Aug. 23, 2013) (breach of contract in Maryland requires only a contractual obligation and a material breach thereof); *Clearone Advantage, LLC, v. Kersen*, 756 F. Supp. 3d. 30, 41 (D. Md. 2024) (trade secret misappropriation under both federal and Maryland law requires the existence of a trade secret and the misappropriation of the same). Intent is relevant, however, for the tortious interference claims in Count II, which require a plaintiff to show: (1) the existence of a contract between plaintiff and a third-party; (2) defendant's knowledge of that contract; (3) defendant's *intentional* interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to plaintiff." *Harry and Jeanette Weinberg Foundation, Inc. v. St. Marks Avenue, LLC*, No. 15-3525-GLR, 2018 WL 704866 at *3 (D. Md. Feb. 5, 2018) (emphasis added). Similarly, to prove tortious interference with business relationships, the plaintiff must show: "(1) *intentional* and willful acts; (2) calculated to cause damage to the plaintiff; (3) done to cause damage and loss, without right or justifiable cause on part of the defendant (which constitutes malice); and (4)

damage resulting." *Hyperheal Hyperbarics, Inc. v. Shapiro*, No. 18-1679-RDB, 2018 WL 4257331 at *8 (D. Md. Sept. 6, 2018) (citations omitted and emphasis added). Wilson, as the party resisting discovery, fails to carry his burden to demonstrate irrelevance. *See Clark v. Bank of Am.*, No. 18-3672-SAG, 2021 WL 12112188, at *1 (D. Md. Mar. 29, 2021) (citing *United Oil*, 227 F.R.D. at 411). Therefore, the information and documents requested by MuniCap are relevant to MuniCap's tortious interference claim.

In addition to relevance, Wilson raises the applicability of attorney-client privilege. Discovery is not unlimited, *see Oppenheimer Fund.*, 437 U.S. at 351, and may be inappropriate if the responsive information is privileged, Fed. R. Civ. P. 26(b)(1). The attorney-client privilege protects confidential communications between a lawyer and a client from disclosure. *See, e.g.*, *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). However, because this privilege "impedes the full and free discovery of the truth," it must be "narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (cleaned up). For the privilege to apply, the proponent must establish, among other things, an existing or prospective attorney-client relationship and a communication made to the attorney in confidence "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding[.]" *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (citation omitted).

8

At the motions hearing—and notwithstanding his silence on the matter before the hearing[4]—Wilson argued that the requested documents are privileged, and therefore not discoverable.  Here, RFP 15 seeks communications between Wilson and his attorneys.  This fact in and of itself, however, does not end the inquiry and render the entirety of the documents privileged.  The specific information MuniCap seeks comprises the dates of the retainer agreement and engagement letters or contracts, but not any privileged information.  Pl's MTC RFP, at 10.  In general, fee arrangements do not constitute or contain confidential communications.  *In re Grand Jury Matter*, 926 F.2d 348, 352 (4th Cir. 1992).  As a result, information concerning retention and fee arrangements falls beyond the scope of the privilege "[a]bsent special circumstances[.]" *In re Grand Jury Subpoena*, 204 F.3d 516, 520 (4th Cir. 2000) (citing *Chaudry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999), and then citing *In re Shargel*, 742 F.2d 61, 63 (2d Cir. 1984)) (internal quotation marks omitted).  Wilson does not provide any reason why these dates would be privileged and thus does not meet his burden.  *See In re Grand Jury Matter*, 926 F.2d at 352 ("The attorneys offered no evidence that the arrangements, in and of themselves, were confidential communications.").    Wilson's failure to specify confidential communications within the scope of the privilege is enough to defeat his (late) objection to the limited information sought.  *See In re Grand Jury Matter*, 926 F.2d at 352; *Wellin v. Wellin*, Nos. 13-1831, 13-3595, 14-4067, 2015 WL 12910906, at *4-5 (D.S.C. Aug. 26, 2015) (granting motion to compel production of retainer letters because "there is nothing in either retainer letter that rises to the level of protected attorney-client information"

---

[4] Because the Court grants the relief MuniCap seeks, and that request does not seek privileged information, the Court need not wrestle with whether Wilson's delay in asserting privilege waives the argument.

such as the "motive . . . in seeking representation, litigation strategy, or the specific nature of the services performed"); *see also Waterkeeper All., Inc. v. Alan & Kristin Hudson Farm*, 278 F.R.D. 136, 140 (D. Md. 2011) (The asserting party must support its claim by "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm.") (internal quotations and citations omitted).  The Motion to Compel is GRANTED as to RFP 15 and otherwise denied as moot.  Wilson must produce documents responsive to RFP 15, which, by MuniCap's own terms, excludes privileged information.

### B. The Court will not compel ESI categorization in this circumstance where the ESI production is searchable, the production includes metadata, and the producing party identified the relevant custodian of the ESI.

MuniCap's second Motion to Compel focuses on the producing party's obligations with respect to an ESI production.[5]  The dispute here concerns the sufficiency of Wilson's RFP responses—specifically, whether his production of more than 75,000 pages in searchable, TIFF format satisfies his obligations pursuant to Federal Rule of Civil Procedure 34.  MuniCap argues that the Federal Rules require Wilson to organize and label the ESI in a manner that provides context for each production and makes the ESI easily decipherable.  Pl.'s MTC ESI, at 5.  Based on the facts of this dispute, the Court

---

[5] Wilson's opposition argued that the second Motion to Compel is premature because it contained new information that was never disclosed to Wilson in the meet and confer—that MuniCap consulted and hired e-discovery specialists—and should be discussed before the Court resolves the issue.  Opposition to Plaintiff's Motion to Compel, ECF 54-2, at 6-8 ("Def.'s Opp'n").  MuniCap disagrees.  Plaintiff's Reply in Support of MTC ESI, ECF 54-3, at 1-3 ("Pl.'s Reply").  Whether or not the parties conferred about this specific fact, there is no dispute that they did discuss—with no resolution—their respective positions regarding whether Wilson's documents are searchable and/or MuniCap's satisfaction with how they are or are not organized.  Thus, notwithstanding that that fact changed between the briefing and the hearing, the Motion to Compel is properly before the Court.

denies the Motion to Compel because regardless of which Rule 34(b)(2)(E) subparts apply, Wilson's production satisfies the Rule.  However, to reduce the need for additional depositions and motions practice, the Court directs Wilson to provide MuniCap with identifying information for certain spreadsheets referenced by MuniCap during the motions hearing.

In challenging the sufficiency of Wilson's production, MuniCap argues that "[t]he issue is not simply the burden of reviewing an unorganized production, but rather the fact that a significant bulk of the documents lack the context necessary to permit any meaningful review at all—even with sophisticated tools."  Pl.'s MTC ESI, at 5.  It asserts that Rule 34(b)(2)(E)(i) requires Wilson to organize and label his responsive documents to correspond to the categories in MuniCap's requests.  *Id.* at 2.  MuniCap also contends that it is less burdensome to have Wilson, who is more familiar with the documents and their relationship to the requests, to provide organization than for MuniCap to spend its deposition of Wilson and other time attempting to organize the materials.  Wilson counters that the requirement of organizing and labeling documents under Rule 34(b)(2)(E)(i) does not apply to the production of ESI and that he satisfied ESI production obligations imposed by Rule 34(b)(2)(E)(ii) by "merely producing searchable documents, sortable by metadata fields."  Opposition to Motion to Compel Categorization of Document Production, ECF 54-2 at 2 ("Def.'s Opp'n").  In the alternative, Wilson maintains that the production satisfies Rule 34(b)(2)(E)(ii) because he produced the ESI in the manner kept in the usual course of business and the content and metadata in the TIFF files are searchable.

>    *i.    Courts are split on Rule 34(b)(2)(E)(i)'s application to ESI.*

As all agree, Rule 34 governs document production.  In its current form, Rule 34(b)(2)(E) states:

> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

In 2006, the Advisory Committee amended Rule 34 to ensure that "[t]he production of [ESI] [is] subject to comparable requirements [to hard-copy documents] to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party."  Fed. R. Civ. P. 34 advisory committee's note (2006 Amendment, subdivision (a)).  Because such requirements already existed for paper documents, this amendment aimed "to ensure similar protection for [ESI]."  Fed. R. Civ. P. 34 advisory committee's note (2006 Amendment, subdivision (b)).  As a result of the amendment, "the responding party must produce [ESI] either in [the form] in which it is ordinarily maintained or in [a form] that is reasonably usable[,]" but "[u]nder some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information."  Fed. R. Civ. P. 34 advisory committee's note (2006 Amendment, subdivision (b)).  If the ESI is ordinarily maintained in a form that "is not reasonably usable by any party . . . [t]he questions whether a producing party

should be required to convert such information to a more usable form, or should be required to produce it at all, should be addressed under Rule 26(b)(2)(B)." *Id.*

There appears to be no serious dispute that the *format* requirements of 34(b)(2)(E)(ii) apply to ESI. Courts disagree, however, about whether the *organizational* requirements of 34(b)(2)(e)(i) also apply to ESI. A minority of courts hold that ESI are governed exclusively by Rule 34(b)(2)(E)(ii). Under this view, the Advisory Committee, by referring to "documents" in subsection (i) and "electronically stored information" in subsection (ii), created a distinct subsection for ESI in part because an organizational requirement for ESI is unnecessary. *See, e.g.*, *Anderson Living Trust v. WPX Energy Production, LLC*, 298 F.R.D. 514, 526 (D.N.M. 2014) ("Because rule 34(b)(2)(E)(i) is not controlling, the Defendants are under no obligation to produce their discovery in the usual course of business, nor to label it to correspond to the categories in the Plaintiff's request"). This is because any ESI produced in a "reasonably usable" form is text searchable. *See* Fed. R. Civ. P., Rules and Commentary § 34:55; *see also Anderson Living Trust*, 298 F.R.D. at 526. In contrast, a majority of courts considering the issue hold that ESI production must satisfy both Rule 34(b)(2)(E)(i)-(ii), emphasizing that when the Advisory Committee rewrote Rule 34, it sought to provide similar protection for both hard copies of documents and ESI. *See* Fed. R. Civ. P. 34 advisory committee's note (2006 Amendment, subdivision (b)); *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 583 (C.D. Cal. 2011) ("[T]here is a broad consensus among courts that have directly considered this issue that the requirements set forth in Rule 34(b)(2)(E)(i) regarding the organization of discovery productions apply to productions of both traditional hard copy documents and ESI."); *Ronaldson v. Nat'l Ass'n of Home Builders*, No. 19-1034-CKK/DAR, 2020 WL 3259226, at *8 (D.D.C. June 3, 2020) (noting view of "vast majority

13

of courts" treating the requirements of Rule 34(b)(2)(E)(i)-(ii) "as supplementary rather than alternative") (citing *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 388 (D.N.M. 2018)); *Profit Point Tax Techs., Inc. v. DPAD Grp., LLP*, No. 19-698, 2020 WL 12604755, at *3 (M.D. Pa. Sept. 24, 2020) (collecting cases and concluding that "[m]ost of the more recent decisions" view the provisions as supplementary, not alternative); *see also F.D.I.C. v. Appleton*, No. 11-476-JAK, 2012 WL 10245383 at *1 (C.D. Cal. Nov. 29, 2012) ("Interpreting the Federal Rules to require ESI productions to be organized in such a way as to facilitate, not hinder, the usefulness of the information produced also makes common sense.").[6] Courts in the Fourth Circuit appear to fall in the majority camp. *See In re Camp Lejeune Water Litig.*, No. 23-897, 2024 WL 1080988, at *3 (E.D.N.C. Mar. 12, 2024) (applying Rule 34(b)(2)(E)(i) to an ESI production); *Johnson v. Italian Shoemakers, Inc.*, No. 17-0740-FDW-DSC, 2018 WL 5266853, at *2 (W.D.N.C. Oct. 23, 2018) (same); *Spilker v. Medtronic, Inc.*, No. 13-76-H, 2015 WL 1643258, at *4 (E.D.N.C. Apr. 13, 2015) (same); *F.D.I.C. v. Baldini*, No. 12-7050, 2014 WL 1302479, at *8 (S.D. W. Va. Mar. 28, 2014) (same); *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, No. 12-0023, 2012 WL 6726412, at *2 (W.D. Va. Dec. 27, 2012) (same); *see also* Memorandum Order, *Francis Woukop Yomi v. The Arc of Wash. Cnty., Inc.*, No. 22-964-SAG (D. Md. May 16,

---

[6] These are, of course, excerpts from a small set of cases reflecting the opposing views. Many more exist. For additional cases reflecting the "majority" view, *see Dodd v. Hendrickson USA, LLC*, 349 F.R.D. 286 (W.D. Ky. 2025); *The Woodmont Co. v. LaSalle Shopping Ctr., LLC*, No. 17-73, 2020 WL 6685705, at *2 (D.N.D. Nov. 12, 2020); *Wilson v. Washington*, No. 16-5366-BHS, 2017 WL 518615, at *2 (W.D. Wash. Feb. 8, 2017); *Quality Mfg. Sys., Inc. v. R/X Automation Sols., Inc.*, No. 13-0260, 2016 WL 1244697, at *6 (M.D. Tenn. Mar. 30, 2016); *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 249 (N.D. Tex. 2016); *F.D.I.C. v. Bowden*, No. 413-245, 2014 WL 2548137, at *4 (S.D. Ga. June 6, 2014). For more on the "minority" view, *see Raab v. Wendel*, No. 16-1396, 2018 WL 11408277, at *4 (E.D. Wis. Feb. 15, 2018); *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.*, 305 F.R.D. 247, 252-53 (D. Colo. 2014).

2023), ECF 59 at 4 (ordering producing party to "identify by Bates range or other means what documents it contends are responsive to each request for production" where two requests "call[ed] for sets of documents that [the producing party] contends are contained within a large personnel file [] already produced" and the producing party "fail[ed] to identify what documents within the personnel file are responsive to each of the two requests.")

Regardless of the split as to which subsections apply to ESI, all courts focus on the usability of the ESI—the minority finding that searchable ESI is inherently usable, and the majority placing an extra layer of protection on that usability by requiring compliance with the organizational requirements of Rule 34(b)(2)(E)(i). *Cf Anderson Living Trust*, 298 F.R.D. at 526 ("The option to produce [ESI] in a reasonably usable form is not . . . the same as [producing] hard-copy documents organized and labeled to correspond to the request, but it is functionally analogous because producing [ESI] in a word searchable format can enable a party to locate pertinent information, regardless of any index or labeling provided"); *QuinStreet, Inc. v. Ferguson*, No. C08-5525-RJB, 2009 WL 1789433, at *5 (W.D. Wash. June 22, 2009) (applying both subsection (i) and (ii) and ordering the defendant to re-produce emails in a "reasonably readable and usable form" and to "indicate which of them responds to [which RFP]").

> ii. *Wilson's production complies with both the majority and minority approaches.*

Mindful that majority view has long been applied by opinions in this circuit, the Court finds that, regardless of approach, Wilson's production satisfies Rule 34(b)(2)(E),

save for the issue with certain spreadsheets.[7] Taking the subsections in reverse order, the Court observes that Wilson satisfied Rule 34(b)(2)(E)(ii) by providing electronic "documents that are searchable and/or sortable by metadata fields." *Italian Shoemakers*, 2018 WL 5266853, at \*2 (collecting authority within and beyond the Fourth Circuit). There is no serious dispute that the production in TIFF format is searchable and preserves metadata. MuniCap challenges the usefulness—rather than the existence—of such data overall, with special emphasis on certain spreadsheets as explained below.

The organizational requirement of Rule 34(b)(2)(E)(i) imposes the disjunctive requirement of either production in the usual course of business *or* labeling the production to correspond to the requests. A party subject to this requirement need not do both. And Wilson contends he has satisfied the Rule—notwithstanding his view that it does not apply—by producing the documents in the usual course of business. "The rule allowing for production in the ordinary course of business presupposes that there be some sort of organization that will be maintained throughout the production." *Appleton*, 2012 WL 102455383, at \*3. A production that lacks an "internal logic"—even if that is how the

---

[7] The Court acknowledges what it sees as the appeal of the majority approach despite the minority's textual interpretation. The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The same is true of the Court's local rules and any other principle applied in service of effecting the Federal Rules. *See* L.R. App'x A Guideline 1 (D. Md. 2025) ("The purpose of these Guidelines is to facilitate the just, speedy, and inexpensive conduct of discovery in civil cases before this Court, and these Guidelines will be construed and administered accordingly, with respect to all attorneys, parties, and non-parties involved in discovery of civil cases before the Court."). These considerations serve as the Court's proverbial north star in navigating disputes involving diverging views of courts and other sources applying broad concepts and rules to varied sets of facts presented in this case and the parties' authority. *See Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (describing "the just, speedy, and inexpensive resolution of disputes" as "Rule 1's paramount command"). But the differences in approach are immaterial to the outcome here.

files were kept—does not satisfy Rule 34(b)(2)(E)(i). *Id.*; *see also Wilson v. Washington*, No. 16-5366-BHS, 2017 WL 518615, at *2 (W.D. Wash. Feb. 8, 2017) (finding production not "rationally organized" where it "was not organized in any specific fashion and there were no titles or categories delineated" and there was "no mechanism, such as a table of contents or summarization, whereby Plaintiff's counsel could locate and identify responsive documents as effectively as the Defendants").

Mindful of these requirements and their purpose, courts applying Rule 34(b)(2)(E)(i) often find production compliant where the producing party provides searchable ESI that preserves metadata and is organized by custodian. *See Spilker*, 2015 WL 1643258, at *4-5 (collecting authority). Wilson contends that he has done just that: he is the sole custodian of the production, as the documents were extracted from his laptop on which he conducts WSPF business, and, as noted above, the documents are searchable and preserve the metadata requested by the RFP instructions.

The Court disagrees with MuniCap's contention that Wilson did not meet its burden to show that ESI was produced as kept in the usual course of business. *See* Pl.'s Reply at 5. The producing party bears the burden to show that the documents were produced as kept in the usual course of business. *Appleton*, 2012 WL 1024583, at *3. Establishing production in the usual course often involves identification of "'where the documents were maintained, who maintained them, and whether the documents came from one single source or file or multiple sources or files.'" *Spilker*, 2015 WL 1643258, at *4 (quoting *Energy Power (Shenzhen) Co. Ltd. v. Xiaolong Wang*, No. 13-11348-DJC, 2014 WL 4687542, at *4 (D. Mass. Sept. 17, 2014)). "A party produces emails in the usual course when it arranges the responsive emails by custodian, in chronological order and with attachments, if any. For non-email ESI, a party must produce the files by custodian

and by the file's location on the hard drive-directory, subdirectory, and file name." *Valeo Elec. Sys., Inc. v. Cleveland Die & Mfg. Co.*, No. 08-12486, 2009 WL 1803216, at *3 (E.D. Mich. June 17, 2009) (citation omitted); *City of Colton*, 277 F.R.D. at 585 (same).  Wilson produced the requested ESI as TIFF images and, for spreadsheets, in native Excel format with all accompanying metadata, and all documents were fully searchable.  Def.'s Opp'n, at 4; *see also* Pl.'s MTC ESI at 4 (acknowledging that production comprised TIFF and Excel files).  The ESI was taken from Wilson's personal laptop and mobile phone, then ingested into the Relativity document review platform.  Def.'s Opp'n, at 4.  The Court finds this representation sufficient to show production in the usual course here.

MuniCap's challenge to the "usual course" assertion arises not from a dispute with Wilson's representation about where it obtained the information but from a contention that the production, even if all from a single custodian, suffers from a lack of internal logic.  *See Appleton*, 2012 WL 102455383, at *3.  The Court finds unpersuasive MuniCap's authority in support of its position.  *Appleton* involved judicial criticism of document production by a government agency that collected documents from multiple sources, undermining any suggestion or inference that the production maintained the electronic materials as they were kept in the ordinary course.  *Appleton*, 2012 WL 10245383, at *3-4 (observing that "when the Government is conducting an investigation (as it is in the present case), 'it is no surprise that the complete collection [of documents] is maintained as it was collected—in large disorderly databases'" (quoting *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 413 (S.D.N.Y. 2009)) (alterations in original)).  Therefore, the responding party's explanation of how it set up the Relativity document management database was not enough to carry its burden.  *Id*. at *3.  A similar dynamic appears to be the issue in *F.D.I.C. v. Baldini*, where the court found that the FDIC did not maintain ESI

18

as the originating bank would have in the bank's ordinary course of business. No. 12-7050, 2014 WL 1302479, at *8 (S.D.W. Va. Mar. 28, 2014); *see also Bowden*, 2014 WL 2548137, at *4 (finding that the FDIC "obviously cannot satisfy" the "usual course" requirement due to the nature of how it "takes over" failing banks and their records). Further, the producing party in *Appleton*—again, the FDIC—sought to satisfy its obligations by merely providing access to a document review platform while also failing to assert that all responsive documents were provided to the requesting party or that the platform hosted all documents collected in response to the discovery requests. *Appleton*, 2012 WL 10245383, at *4. Thus, not only did the production fail to preserve the how the documents' owners (i.e., the banks that participated in the government investigation) maintained documents in the usual course, the attempted production was never asserted to be complete and, as a result, reasonably usable or logical in response to the requests. *See id.*

In *City of Colton*, the court ordered reproduction or labeling after finding that the production did not preserve all metadata, including "basic" metadata such as "file name, attachment range, folder title and folder range, among others, all of which would have been readily apparent if the ESI was produced as kept in the usual course." 277 F.R.D. at 585. That is, the lack of sufficient metadata precluded a finding that the documents reflected their maintenance in the usual course. Those facts do not apply here, where MuniCap does not contend that Wilson failed to preserve such basic metadata. Language in *City of Colton* suggests that proper preservation of such metadata would have satisfied the producing party's obligations without additional labeling or organization. *See id.* at 585-86 (observing that the parties could "agree to amend their production protocol to

include metadata fields sufficient to satisfy the requirement under Rule 34(b)(2)(E)(i) that documents, including ESI, be produced as they are kept in the usual course”).

The Court also notes that the majority approach's application of the organization requirement arises from a desire to avoid the proverbial document dump. MuniCap describes what occurred here as a document dump, one designed to “obscure the significance of documents[.]” *City of Colton*, 277 F.R.D. at 584. But the cases observe that Rule 34(b)(2)(E)(i) “prohibits simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought.” *Collins & Aikman*, 256 F.R.D. at 410 (internal quotation marks and citations omitted); *see also Dodd v. Hendrickson USA, LLC*, 349 F.R.D. 286, 299 (W.D. Ky. 2025).

The Court discerns from these cases that proper preservation of metadata and custodians will, at least in many cases, satisfy Rule 34(b)(2)(E)(i). *See, e.g.*, *Spilker*, 2015 WL 1643258, at *5 (denying motion to compel, applying Rule 34(b)(2)(E)(i), where there was “no assertion that Defendants' production is not fully searchable and sortable utilizing the metadata fields as Defendants claim”); *but see Appleton*, 2012 WL 10245383, at *3. What the cases do not speak to is what appears to be MuniCap's core dissatisfaction, that the contents of the documents do not clearly indicate their relevance to a particular RFP. The Court is not convinced that frustration renders the production unusable or otherwise non-compliant with Rule 34. Context, as in most things, is key. Unlike *Appleton*, the challenged production here involves a single custodian and does not appear to involve either (1) vast amounts of documents collected from various sources and combined without any explanation or (2) vast numbers of irrelevant or insignificant documents included to obfuscate what may be significant. The thrust of MuniCap's case is that Wilson, after resigning from MuniCap, established and operated a competing

20

entity—WSPF—and misappropriated MuniCap's proprietary and/or confidential information in doing so. Wilson's production, according to the information before the Court, consists of only the files extracted from Wilson's laptop computer and mobile phone from which he carries on WSPF business. The RFPs seek to capture any potential use or misuse of MuniCap's information in WSPF business since Wilson's resignation. With this understanding, the extraction of business-related information from Wilson's laptop and phone does not appear likely to commingle large quantities of irrelevant information from various sources that are almost certain to be irrelevant to the claims or defenses in this case. Therefore, while the principles MuniCap cites from the aforementioned cases are compelling—and are, no doubt, critical in managing discovery— the circumstances of those cases vary significantly from this one. Therefore, the Court does not find that Wilson's production, in general, violates Rule 34(b)(2)(E)(i).

> iii.   *Notwithstanding substantial compliance with the rule, Wilson must supplement its production by identifying filepath and folder information for spreadsheets.*

Notwithstanding the general conclusion that metadata preservation can demonstrate compliance with Rule 34(b)(2)(E)(i), the matter of Wilson's spreadsheets requires additional discussion. Wilson asserts that these spreadsheets complied with the discovery requirements of both subsection (i) and (ii) because they are, as explained above, reasonably usable due to the preservation of metadata and production in the usual course. MuniCap challenges this (beyond its general objection to the production) based on what it contends is less useful metadata—that is, the metadata for the spreadsheets lacks information such as filepath or source path that might provide additional context for the documents. During the hearing, MuniCap's counsel suggested that because the data in these spreadsheets is client-specific, the spreadsheets need to be connected to

specific clients, a fact not necessarily reflected in the contents of the financial models and other information in the spreadsheets. Defense counsel commented that while it believed the production is proper because the documents were produced in the ordinary course, it could review the source data to look for information such as the folder path indicating where in Wilson's electronic files a specific item was maintained. Asserting that Wilson has already spent more than $100,000 in discovery, defense counsel maintained that it would be unduly burdensome from a time and cost perspective to supplement in the manner Plaintiff seeks.

As noted above, a producing party often satisfies the usual course burden by including for non-email ESI "the file's location on the hard drive-directory, subdirectory, and file name." *City of Colton*, 277 F.R.D. at 585 (quoting *Valeo Elec. Sys.*, 2009 WL 1803216, at *3). MuniCap suggests that this information is limited, if present at all; At the hearing, defense counsel acknowledged that such information may not be included and can be provided, notwithstanding that it was never requested. *See* Def.'s Opp'n at 4. Therefore, the Court exercises its discretion to order a limited supplement based on the circumstances. *See Bowden*, 2014 WL 2548137, at *4 (noting the court's "discretion to direct a party to disclose the manner of production and provide additional information about the documents produced") (internal quotation marks and citations omitted); *FDIC v. Giannoulias*, No. 12-C-1665, 2013 WL 5762397, *3 (N.D. Ill. 2013) ("The Federal Rules give the court leeway to modify the parties' discovery obligations to take these sorts of practical considerations into account."); *see also Kissing Camels Surgery Center, LLC v. Centura Health Corporation*, No. 12-cv-03012-WJM-NYM, 2016 WL 277721, *4 (D. Colo. Jan. 22, 2016) (ordering, despite the district's minority approach to Rule 34(b)(2)(E), additional identification from the responding party). Wilson's counsel proposed that it

could provide additional information, such as a filepath, to provide additional context not apparent from the searchable contents and preserved metadata. Therefore, with respect to the spreadsheets, the Court finds that it would more efficient and less burdensome for Wilson—as the sole custodian and alleged creator of the spreadsheets—to identify either source information (e.g., filepath and folder location) for the spreadsheets or the specific interrogatories relevant to those documents.[8]

### C. Wilson's Rule 26(g) certifications satisfy his discovery obligations.

At the motions hearing, MuniCap alleged that Wilson withheld invoices that should have been produced during discovery. Defense counsel asserts that he produced all responsive documents to MuniCap and that any "gaps" in the invoices indicate the nonexistence of such documents (due to the absence of any work with clients during those periods) rather than any improper withholding. Defense counsel certified that the responses to the document requests were complete, pursuant to Rule 26(g). In raising this challenge, MuniCap appears to question the sincerity of Wilson's certification. This

---

[8] Wilson suggests that MuniCap wait until Wilson's deposition to ask him about the "relevance of ambiguous or unintelligible documents." MuniCap argues that this approach would deprive it "of a meaningful opportunity to prepare for and conduct the deposition and would likely result in unnecessary motion practice" regarding the deposition and a potential request for a second deposition, which Wilson would likely oppose. Pl.'s MTC ESI, at 9. In his opposition, Wilson only responds to the assertion that MuniCap cannot meaningfully prepare for the deposition without the requested discovery. Def.'s Opp'n, at 6 n. 2. MuniCap argues that Wilson's failure to engage the argument about a second deposition should be construed as waiving any opposition to a second deposition. Pl.'s MTC ESI, at 10. The Court declines MuniCap's invitation to opine on such waiver. If it seeks a second deposition, MuniCap must demonstrate a "particularized need" for such request, which the Court will assess based on a concrete presentation rather than the hypothetical raised in the briefs. *See San Francisco Health Plan v. McKesson Corp.*, 264 F.R.D. 20, 21 (D. Mass. 2010) (party must make prima facie showing of need, with court stating its disinclination to "second-guess"); *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 586 (D. Minn. 1999) (party must make "particularized showing" of need).

dispute was neither briefed nor explored in detail at the motions hearing.  The Court concludes that, at this stage, Wilson has complied with his Rule 26(g) obligations.

Federal Rule of Civil Procedure 26(g) requires that at least one attorney of record "certif[y] that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the disclosure is "complete and correct[.]"  Before certifying a discovery response, the certifying attorney must "make 'a reasonable effort to assure that the client has provided all the information and documents responsive to the discovery demand.'"  *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 503 (D. Md. 2000) (quoting Advisory Committee Notes to 1983 amendments to Fed. R. Civ. P. 26(g)).  "If a lawyer or party makes a Rule 26(g) certification that violates the rule, without substantial justification, the court (on motion, or *sua sponte*) must impose an appropriate sanction, which may include an order to pay reasonable expenses and attorney's fees, caused by the violation." *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008).

At the motions hearing, MuniCap did nothing more than allege that Wilson was withholding documents.  Though the Court may *sua sponte* assess whether the certification violates Rule 26, here, there is nothing in the record to indicate that Wilson is not sincere in his certification.  *See, e.g.*, *Textron*, 192 F.R.D. at 505 (finding that counsel violated Rule 26 by comparing "the type and quantity of documents produced initially and those produced after the court ordered investigation").  At this stage, the Court lacks any basis to agree with MuniCap or probe further.  While invoices between Wilson and clients would aid prosecution of the tortious interference claim, absent a stronger showing from MuniCap, the Court is not convinced at this time that Wilson or

his counsel failed to satisfy Rule 26.  This conclusion does not preclude MuniCap (or Wilson) from raising and supporting such a challenge at a later time.[9]

## IV.    CONCLUSION

For the reasons stated herein, Plaintiff's first Motion to Compel (ECF 44) is GRANTED IN PART as to RFP 15 and otherwise DENIED AS MOOT, and the second Motion to Compel (ECF 54) is DENIED.  However, Defendant is ordered to produce additional identifying material, consistent with the attached order.


Date: October 24, 2025                              _____/s/_____
                                                                           Charles D. Austin
                                                                           United States Magistrate Judge

---

[9] Shortly before issuance of this opinion and the accompanying order, MuniCap has raised another possible dispute.  *See* ECF 94.  That matter is not ripe for resolution. Therefore, nothing in this section should be interpreted as resolving or otherwise addressing any contentions the parties may have on that newly raised issue.